UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
:
UNITED STATES OF AMERICA                    :
:
  - v. -                                  :        S1 10 Cr. 56 (RJS)
:
EMANUEL GOFFER,                             :
:
            Defendant.               :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# GOVERNMENT'S SENTENCING MEMORANDUM

                                      PREET BHARARA
                                      United States Attorney for the Southern
                                      District of New York

ANDREW L. FISH
REED M. BRODSKY
RICHARD C. TARLOWE
Assistant United States Attorneys

     - Of Counsel -

The Government respectfully submits this memorandum in connection with the sentencing of Emanuel Goffer. As the evidence at trial established, Emanuel Goffer participated in an insider trading ring that bribed lawyers to obtain valuable inside information regarding corporate mergers and acquisitions. Goffer played an active role in the scheme. He created "cover" instant messages and purchased multiple stocks across a sector in an effort to provide false explanations for the conspirators' insider trading activity. He used an untraceable prepaid cellular telephone to communicate with his brother, Zvi Goffer, regarding inside information. He also helped fund the bribes paid to the Ropes & Gray attorneys. Emanuel Goffer's profits from trades based on the Ropes & Gray tips totaled more than $700,000.

Goffer's active participation in this brazen insider trading scheme warrants a substantial sentence. Accordingly, the Court should impose a sentence within the applicable Guidelines range.

**I.   Goffer's Criminal Conduct**

**A.   The Inside Information from the Ropes & Gray Attorneys**

Emanuel Goffer obtained from Zvi Goffer material, nonpublic information regarding corporate mergers and acquisitions that had been misappropriated from Ropes & Gray by attorneys Arthur Cutillo and Brien Santarlas. This included inside information regarding the acquisition of 3Com Corporation ("3Com"), information concerning a potential acquisition of P.F. Chang's China Bistro, Inc., and information relating to the acquisition of Clear Channel Communications, Inc.  Emanuel Goffer used this inside information to execute profitable securities trades. The profits from trades based on the 3Com tip in accounts in Emanuel Goffer's name were $723,523. The profits from trades based on the Clear Channel tip in May 2008 were

approximately $38,100.[1]

Emanuel Goffer was an active participant in the insider trading scheme. He used a prepaid cellular telephone to communicate with Zvi Goffer. (*See, e.g.*, GX 186-T, 194-T). The prepaid cellular telephones could not be linked to the conspirators, and the Goffer brothers employed them in an effort to avoid detection by law enforcement. Emanuel Goffer also created "cover" instant messages in an effort to provide false explanations for the conspirators' insider trading activity. (*See, e.g.*, Tr. 819-21). In addition, Emanuel Goffer sought to conceal his trades based on inside information by purchasing other stocks in the same sector. (*See, e.g.*, GX 157-T at 3). Emanuel Goffer also helped fund the bribes paid to the Ropes & Gray attorneys. For example, in September 2007, Emanuel Goffer purchased 3Com stock for David Plate. (Tr. 826-27). After the 3Com acquisition was publicly announced, Zvi Goffer told Plate that the profits from the shares that Emanuel Goffer had purchased for Plate would be used to help pay Zvi Goffer's source. (Tr. 835). Emanuel Goffer, who controlled the shares, necessarily knew of this arrangement.

B.   **Emanuel Goffer Trades on the Shankar Tips**

In addition to corrupting the Ropes & Gray attorneys, Goffer also profited by executing securities transactions in advance of the public announcement of (1) the acquisition of Kronos, Inc., by Hellman & Friedman Capital Partners VI, L.P., and its related funds, and (2) the

---

[1] Although Goffer purchased P.F. Chang's stock after learning from the Ropes & Gray lawyers (through his brother) of a potential acquisition, no acquisition was ever announced and therefore Goffer did not profit from those trades. Goffer and other conspirators lost money in March 2008 by executing trades based on the incorrect tip from the Ropes & Gray attorneys that the Clear Channel transaction would be closing at that time. In May 2008, the Ropes & Gray attorneys tipped Zvi Goffer (via Jason Goldfarb) that the litigation between Clear Channel and certain other parties would be settled, and Emanuel Goffer profited by trading on this material, nonpublic information.

acquisition of Hilton Hotels Corp. by The Blackstone Group. Goffer received tips to buy these securities from Zvi Goffer, who had received the tips from Gautham Shankar. Emanuel Goffer earned approximately $352,681 from trades based on the Kronos information and approximately $1,671,129 from trades based on the Hilton information. Notably, in an intercepted telephone conversation, Zvi Goffer discussed with Emanuel Goffer the fact that Emanuel Goffer's traders had earned hundreds of thousands of dollars when "Hilton hit." (GX 157-T at 4).

The information regarding the Hilton and Kronos transactions came from Deep Shah, an employee of Moody's. In the case of Hilton, Shah learned about the transaction in the course of his employment at Moody's and had a duty not to disclose the information. In the case of Kronos, Shah obtained information about the transaction from a roommate, who learned about the transaction through his employment at an investment bank. Shah either misappropriated the Kronos information from the roommate or obtained the information from the roommate, who provided it to Shah in violation of a duty of trust and confidence to the investment bank and its clients. Shah passed the information about these transactions to Roomy Khan. Khan passed the information to Thomas Hardin, and Hardin passed the information to Shankar.

Shankar did not tell Zvi Goffer the source of the Kronos and Hilton tips. However, following the Kronos and Hilton acquisitions, Shankar asked Zvi Goffer for cash to pay his source. Zvi Goffer paid Shankar approximately $10,000 after the Kronos acquisition and additional cash after the Hilton acquisition. Zvi Goffer told Shankar that Emanuel Goffer had purchased shares of these stocks for Shankar.

## II. Applicable Law

Although the Sentencing Guidelines are no longer mandatory, they nevertheless continue

to play a critical role in trying to achieve the "basic aim" that Congress tried to meet in enacting the Sentencing Reform Act, namely, "ensuring similar sentences for those who have committed similar crimes in similar ways." *United States* v. *Booker*, 543 U.S. 220, 252 (2005); *see United States* v. *Crosby*, 397 F.3d 103, 113 (2d Cir. 2005) ("[I]t is important to bear in mind that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge."). Indeed, the applicable Sentencing Guidelines range "will be a benchmark or a point of reference or departure" when considering a particular sentence to impose. *United States* v. *Rubenstein*, 403 F.3d 93, 98-99 (2d Cir. 2005).

In furtherance of that goal, a sentencing court is required to "consider the Guidelines 'sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant,' the pertinent Sentencing Commission policy statements, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims" *United States* v. *Booker*, 543 U.S. at 260 (citations omitted); *see also id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing.").

Apart from the Sentencing Guidelines, as the Court is well aware, the other factors set forth in Section 3553(a) must be considered. Section 3553(a) directs the Court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in paragraph two. That sub-paragraph sets forth the purposes as:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

Section 3553(a) further directs the Court—in determining the particular sentence to impose—to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the statutory purposes noted above; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range as set forth in the Sentencing Guidelines; (5) the Sentencing Guidelines policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a). The Court "shall impose a sentence sufficient, but not greater than necessary, to comply" with these purposes. *Id*.

In light of *Booker*, the Second Circuit has instructed that district courts should engage in a three-step sentencing procedure. *See United States* v. *Crosby*, 397 F.3d at 103. First, the Court must determine the applicable Sentencing Guidelines range, and in so doing, "the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Crosby*, 397 F.3d at 112. Second, the Court must consider whether a departure from that Guidelines range is appropriate. *Id*. Third, the Court must consider the Guidelines range, "along with all of the factors listed in section 3553(a)," and determine the sentence to impose. *Id.* at 113.

### III. Analysis

For the reasons discussed below, Goffer's Guidelines sentencing range is 41 to 51 months

5

if Goffer's Hilton profits are excluded from the Guidelines calculation. Goffer's Guidelines sentencing range is 51 to 63 months if the Hilton profits are included. Goffer's illegal conduct, weighed in view of the factors set forth in Section 3553(a), warrants a term of imprisonment within the applicable Guidelines range.

### A. The Guidelines Sentencing Range

Goffer's profits from the 3Com trades were approximately $723,523 and his profits from the trades based on the May 2008 Clear Channel tip were approximately $38,100. Based on those profits alone, Goffer's Guidelines offense level would be 22, and his Guidelines sentencing range would be 41 to 51 months' imprisonment.

Moreover, there is evidence that Goffer knew that his Hilton trades were based on inside information. This evidence included the size of Goffer's trade, the fact that he purchased a large volume of Hilton shares just before the acquisition, and the fact that Shankar had a proven track record in light of the earlier Kronos tip. If Goffer's Hilton profits are included in the Guidelines calculation, Goffer's Guidelines offense level would be 24, and his Guidelines sentencing range would be 51 to 63 months' imprisonment.

### B. A Sentence Within the Guidelines Range Is Appropriate

Goffer's role in an insider trading ring that corrupted lawyers and allowed him to earn hundreds of thousands of dollars in illegal profits warrants a sentence within the applicable Guidelines range. Goffer does not address his offense in his sentencing submission. Instead, he focuses on his family circumstances. There is no question that Goffer's family has suffered and will continue to suffer as a result of his crimes. That is true for every defendant with a wife and children. A sad part of any criminal sentencing is the impact on a defendant's family, but the

6

defendant himself is, of course, responsible for that harm.

In this case, the need to deter others from engaging in insider trading warrants a sentence within the Guidelines range. Insider trading is difficult to detect and prosecute. As a result, when law enforcement uncovers an insider trading scheme, it is important to send a clear and powerful message that those committing this offense will be prosecuted and go to prison for a significant length of time. *See United States* v. *Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) (Posner, J.) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."). Indeed, Goffer was able to personally earn hundreds of thousands of dollars in illegal profits, and he apparently had little fear of getting caught. A significant sentence is necessary to deter other traders from engaging in similar illegal activity.

### IV. The Court Should Order Forfeiture

The Government may obtain a money judgment against the defendant to recover the amount of the crime proceeds. *See*, *e.g.*, *United States* v. *Kalish*, 626 F.3d 165, 169 (2d Cir. 2010); *United States* v. *Baker*, 227 F.3d 955, 970 (7th Cir. 2000) (a forfeiture order may include a money judgment for the amount of money involved in an offense; the money judgment acts as a lien against the defendant personally for the duration of his prison term and beyond); Fed. R. Crim. P. 32.2. The amount of the money judgment should be equal to the gross proceeds of the defendant's crime, without deducting expenses. *See*, *e.g.*, *United States* v. *Uddin*, 551 F.3d 176, 181 (2d Cir. 2009) (defendant convicted of food stamp fraud was properly sentenced to a forfeiture money judgment equal to the entire loss amount paid by the government, without

7

subtracting the amount of cash that the defendant shared with the food stamp beneficiary; "Because the statute [18 U.S.C. § 981(a)(2)(A)] directs that 'proceeds' are not limited to net profits from the crime, and because any proceeds directly traceable to food stamp fraud are subject to forfeiture, the district court did not commit error by entering a forfeiture order equal to the entire loss amount."). A money judgment is appropriate even if the defendant did not retain the proceeds of his crime or does not have the resources to pay the money judgment. *See*, *e.g.*, *United States* v. *Kalish*, 626 F.3d at 169. In cases involving continuing schemes and conspiracies, the amount involved in the entire scheme is forfeitable. *See*, *e.g.*, *United States* v. *Royer*, 549 F.3d 886, 904 (2d Cir. 2008) (holding that defendant in insider trading case was properly ordered to forfeit all profits earned by defendant's tippees).

Accordingly, Goffer should be ordered to forfeit the gain from the offenses that was reasonably foreseeable to him. If this Court were to exclude Hilton proceeds that figure would be $761,623. If the Court were to include Goffer's Hilton profits, that figure would be $2,432,752.

## CONCLUSION

For the reasons explained above, Emanuel Goffer should be sentenced to a term of imprisonment within the applicable Guidelines range.

Dated: New York, New York
       September 30, 2011

                                      Respectfully submitted,

                                      PREET BHARARA
                                      United States Attorney
                                      Southern District of New York

                By:           /s/
                         Andrew L. Fish
                         Reed M. Brodsky
                         Richard C. Tarlowe
                         Assistant United States Attorneys
                         (212) 637-2598/2492/2330